APR 0 3 2008
DENNIS P. IAVARONE, CLERK
US DISTRICT COURT, EDNC
BY_____ DEP CLK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
Case No.: 5:08-CV-0053

| | |
|---|---|
| THOMAS E. EVANS, | ) |
| Plaintiff, | ) |
| v. | ) AMENDED COMPLAINT |
| | ) (Jury Trial Demanded) |
| EAST CAROLINA UNIVERSITY, | ) |
| Defendant | ) |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 (Title VII) and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices, and to provide appropriate relief to Thomas E. Evans who was adversely affected by such practices. These practices include, but are not limited to, termination of the Plaintiff's employment on the basis of his race and sex and the tort of wrongful discharge in violation of North Carolina public policy.

## JURISDICTION AND VENUE

1. On or about February 9, 2007, Plaintiff filed concurrent charges with the Equal Employment Opportunity Commission (EEOC) and the North Carolina Office of Administrative Hearings, Civil Rights Division, on the basis of gender and race against the ECU. See Exhibit A.

2. The charges were timely filed with respect to all issues alleged.

3. On or about October 18, 2007, Plaintiff received a Dismissal and Notice of Rights from EEOC. See Exhibit B.

Case 5:08-cv-00053-BO   Document 8   Filed 04/03/08   Page 1 of 10

4. This action was initially filed in Johnston County Superior Court on January 15, 2008, within 90 days of Plaintiff's receipt of the Dismissal and Notice of Rights.

5. On February 12, 2008, ECU removed this action to this, the U.S. District Court for the Eastern District of North Carolina, Western Division.

6. Jurisdiction of this Court is conferred by Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-5(f) and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. 1981a, and 28 U.S.C. 1331 and 1343.

7. Venue is properly laid under 28 U.S.C. 1391 in that the employment practices alleged to be unlawful were committed in Pitt County, North Carolina, within the jurisdiction of the United States District Court for the Eastern District of North Carolina.

8. The cause of action for wrongful discharge in violation of North Carolina public policy is one in tort under North Carolina law, and grows out of the same set of facts and circumstances involved in the Federal statute allegations. As such, this Court can take pendent jurisdiction of the tort claim.

9. Pursuant to 42 U.S.C. 2000e-5(f), all jurisdictional prerequisites to the filing of this suit have been satisfied.

10. After an enlargement of time in which to respond, on March 19, 2008, ECU filed a Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

11. The Defendant, having not yet filed a responsive pleading, the Plaintiff hereby files as a matter of course, this Amended Complaint pursuant to Rule 15(a) of the Federal rules of Civil Procedure.

## PARTIES

12. Plaintiff, Thomas E. Evans, is an adult citizen and resident of Johnston County, North Carolina. He is a white male who is authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. 2000e-5(f)(1) and (3).

13. Defendant, East Carolina University (ECU or the University) is a constituent of the University of North Carolina system and is located in Greenville, North Carolina. At all relevant times, Plaintiff was employed by ECU in Greenville, North Carolina.

14. At all relevant times, ECU has been an employer as defined by Title VII, 42 U.S.C. 2000e-(b).

15. At all relevant times, ECU has continuously been engaged in an industry affecting commerce within the meaning of Sections 701(g) and (h) of Title VII, 42 U.S.C. 2000e-(g) and (h).

## STATEMENT OF FACTS

16. Plaintiff began working for ECU on or about March 9, 2006, in the position of Assistant Chief of Police at its campus in Greenville, NC.

17. Prior to his employment at ECU, Plaintiff had served continuously in a law enforcement or criminal investigative capacity at the state, federal, and corporate levels since beginning professional service in 1985.

18. The Plaintiff possesses Bachelor of Science and Master of Science Degrees from ECU in the fields of criminal justice and criminal justice administration, respectively, and has over 5000 hours of technical course training related to his profession. See Exhibit C.

19. At the time of his hire by ECU as Assistant Chief of Police, Plaintiff met all stated qualifications for the position.

20. Plaintiff was notified during his interview for employment that a law enforcement vehicle had already been ordered for the new Assistant Chief of Police but it would not be delivered until late in 2006. Plaintiff was informed that a temporary vehicle would be provided until the permanent vehicle arrived.

21. After the Plaintiff was hired, the Police Department obtained authorization from ECU's Parking and Traffic Services Department to rent a local pool vehicle for Plaintiff's use until a permanent assignment could be made from the State Motor Pool Fleet.

22. The Plaintiff proceeded to use the vehicle in the performance of his official duties and to travel to and from his residence as he had been authorized to do.

23. The Parking and Traffic Services Department subsequently determined that his use of the rented vehicle was improper, and informed the Plaintiff that he would be required to reimburse the University for use of the vehicle.

24. Plaintiff was informed that his cooperation was needed to "sweep the matter under a rug and cover it up" to avoid scrutiny by State agencies. Plaintiff was then asked to sign a statement indicating that he had engaged in wrongdoing by utilizing the vehicle. Plaintiff refused to do so.

25. Plaintiff objected to the demand to reimburse the University and offered to show University officials that his use of the vehicle was in accordance with published regulations which contained an exception for vehicle users whose duties were routinely related to public safety.

26. ECU officials ignored this information and informed Plaintiff that if he did not voluntarily reimburse the University, the amount claimed to be owed would be withheld from his pay. Plaintiff objected to this procedure.

27. Thereafter, Plaintiff sought to determine who had authorized the withholding of his salary. He was informed that if he did not cease his inquiries, he would be terminated.

28. Plaintiff informed University officials that he intended to hire an attorney to contest the withholding of his wages.

29. On or about June 12, 2006, Plaintiff suffered a work related injury. He filed a workers' compensation report and claim with ECU. The University took no immediate action on the claim filed by the Plaintiff.

30. Despite delays by ECU in processing Plaintiff's claim for a work related injury, Plaintiff persisted in pressing his claim until, nearly a month later, he was granted a medical appointment. At the appointment, Plaintiff's request for diagnostic or radiological examination of the injury site was refused.

31. During the course of his employment, Plaintiff, as ECU Police incident commander, was required to protect and monitor an arson fire scene at Clement Hall, on the campus of ECU.

32. In the performance of his duty at the Clement Hall fire scene, Plaintiff prevented the unauthorized entry onto the scene by George Harrell, Senior Associate Vice chancellor, Campus Operations, a division of Administration and Finance.

33. As a result of this performance of his duties, Mr. Harrell contacted Plaintiff's Supervisor, Chief of Police, Robert Stroud, to complain about Plaintiff's actions.

34. On or about June 22, 2006, the Plaintiff received a quarterly review of his performance by the Chief of Police, Robert Stroud, white male. The review noted that Plaintiff's performance was "Outstanding". Plaintiff was presented with the review and signed it. See Exhibit D.

35. When Chief Stroud submitted the review to his superior, Marilyn Sheerer, PhD, Interim Vice-Chancellor of Student Life, white female, she instructed Chief Stroud to lower the score of the review of Plaintiff to "Below Good".

36. At the time that she gave these instructions to Chief Stroud, Dr. Sheerer had been in her position for less than one month and was not familiar with Plaintiff's work performance.

37. When Chief Stroud presented Plaintiff with the modified review, he informed Plaintiff that he had revised the original review under threat by Dr. Sheerer that he (Chief Stroud) would be terminated if he did not do so.

38. Chief Stroud later informed Plaintiff that Dr. Sheerer had stated to him that she did not trust males, especially white males.

39. On or about July 18, 2006, less than one month after his quarterly review, Plaintiff was discharged from employment by ECU. His letter of termination cited the same reasons as those given for his "Below Good" quarterly review.

40. The letter of termination was signed and given to Plaintiff by Chief Stroud, who stated that he had been ordered to discharge Plaintiff by Dr. Sheerer. When Chief Stroud handed the letter of termination to the Plaintiff, Chief Stroud stated that he still believed that Plaintiff was the right person for the position.

41. The reasons stated in the letter of termination were not a true description of Plaintiff's performance and were a pretext for discharging him on the basis of his race and sex.

42. After the Plaintiff's discharge, Chief Stroud was stripped of much of his authority by Dr. Sheerer, and as a result, he resigned his position.

43. In replacing Chief Stroud, Dr. Sheerer bypassed two white male officers, Major Frank

6

Case 5:08-cv-00053-BO   Document 8   Filed 04/03/08   Page 6 of 10

Knight and Captain Mike Perry, both of whom had master's degrees and over 25 years of experience each. Dr. Sheerer appointed a black female, who had only a high school degree.

44. Since Plaintiff's discharge, other white males under Dr. Sheerer's supervision have been passed over for promotion, discharged or forced to resign.

## FIRST CAUSE OF ACTION
### Title VII of the Civil Rights Act of 1964
### 42 U.S.C. 2000e-2(a)
### Discrimination Based on Race and Sex

45. Plaintiff hereby incorporates by reference the preceding allegations as if fully set forth below.

46. Plaintiff, a white male, was qualified for the position of Assistant Chief of Police of ECU and performed his duties in a manner considered by his supervisor, the Chief of Police, to be outstanding.

47. Plaintiff was discharged by the Chief of Police at the direction of Dr. Sheerer, white female, on the pretext that Plaintiff's performance was unsatisfactory.

48. Dr. Sheerer had directly expressed to the Chief of Police that she did not trust white males.

49. Plaintiff was discharged on the basis of his race and sex in violation of Title VII of the Civil Rights Act of 1964.

50. ECU's termination of Plaintiff because of his race and sex entitles Plaintiff to recover damages in the form of actual and compensatory damages in amounts to be proved at trial.

7

## SECOND CAUSE OF ACTION
### Wrongful Discharge in Violation of North Carolina Public Policy

51. Plaintiff hereby incorporates by reference the preceding allegations as if fully set forth below.

52. During the course of his employment by ECU, Plaintiff was given a vehicle to operate in the performance of his duties. He was later informed that doing so had been improper and that he would have to reimburse ECU for the cost of the operation of the vehicle.

53. Plaintiff was informed that his cooperation was needed to "sweep the matter under a rug and cover it up" to avoid scrutiny in Raleigh, NC. Plaintiff was then asked to sign a statement indicating that he had engaged in wrongdoing by utilizing the vehicle. Plaintiff refused to do so.

54. Plaintiff objected to being required to reimburse ECU and noted to University officials that his use of the vehicle was authorized by North Carolina regulations.

55. The amount claimed to be owed to the University was deducted from his wages without his permission.

56. When Plaintiff sought to determine who had authorized the deduction, he was informed that if he pursued such an inquiry he would be terminated.

57. Plaintiff informed University officials that he intended to hire an attorney to contest the withholding of his wages.

58. On or about June 12, 2006, Plaintiff suffered a work related injury. He filed a workers' compensation report and claim with ECU. The University took no immediate action on the claim filed by the Plaintiff.

8

59. Plaintiff had to engage in persistent efforts to be seen by a medical professional in order to be treated for his injury.

60. During the course of his employment and in the performance of his professional duties as the ECU Police incident commander, Plaintiff was required to protect and monitor an arson fire scene at Clement Hall, on the campus of ECU.

61. In the performance of his duty at the Clement Hall fire scene, Plaintiff prevented the unauthorized entry onto the scene by George Harrell, Senior Associate Vice Chancellor for Campus Operations.

62. As a result of this performance of his duties, Mr. Harrell contacted Plaintiff's Supervisor, Chief of Police, Robert Stroud, to complain about Plaintiff's actions.

63. In addition to Plaintiff's allegations herein that his discharge was based on race and sex, his pursuit of his rights to workers' compensation benefits, his complaints about and investigation of the improper withholding of his wages, as well as carrying out his duties, even including preventing a Vice Chancellor of the University from contaminating a potential crime scene, were factors in his discharge.

64. Discharge for asserting his rights to workers' compensation, for challenging the unlawful withholding of wages, and for the proper performance of a potential criminal investigation, all violate the public policy of North Carolina.

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Grant the Plaintiff's request for a jury trial;

B. Order ECU to reinstate Plaintiff to the position he held prior to his discharge with reinstatement of all attendant benefits;

C.  Grant a permanent injunction enjoining ECU, its officers, successors, assigns and all persons in active concert or participation with it, from engaging in any employment practices which violate the provisions of Title VII of the Civil Rights Act of 1964 prohibiting employment discrimination on the basis of race and sex;

D.  Order ECU to make whole the Plaintiff by providing him with appropriate back pay and other costs and losses, with pre- and post-judgment interest, in amounts to be proved at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices;

E.  Order the Defendant to make Plaintiff whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described herein, including but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life and humiliation, in amounts to be proved at trial;

F.  Grant that the cost of this action be taxed against ECU;

G.  Order ECU to pay the Plaintiff's reasonable attorney's fees; and

H.  Grant such further relief as the Court deems necessary and proper.

This the 3RD day of April, 2008

*Thomas E. Evans*
Thomas E. Evans
4 Pinnacle Point
Clayton, NC 27527
919-553-4006
919-810-7079

10